All right. Our second case this morning is 21-3210, United States v. Linares. And, Mr. Hansmeier, you may proceed. Judge, I can't proceed. No, it's on the clock. I don't think I get that. Do you have that much time in you? I'm sure I can take it. Okay. There we go. Okay. Judge Timkovich, and may it please the court, this appeal involves two guidelines issues, a 2X1.1B1 issue and a 2B3.1B5 issue. I'm going to start with the 2X1.1 issue, unless somebody directs me otherwise. There are three independent reasons why this court should vacate and remand on this issue, and each of those reasons is rooted in the provisions plaintext. First, the circumstances did not demonstrate that Linares was about to complete all the acts he believed necessary for the successful completion of the armed vehicle robbery. Second, contrary to the district court's determination below, Grubin-Diaz's 911 call did not interrupt the attempted robbery. And third, even if the 911 call interrupted the attempted robbery, a 911 call is not an event that is similar to an apprehension. So for any of those reasons, you should vacate and remand. So starting with the first reason, focusing on the about-to-complete language, a few points on that. First, the plain, ordinary meaning of the phrase about-to-complete means the point at which an individual is going to finish something, or the point when one is on the verge of finishing something. And the something in this case is a vehicle robbery under Kansas law, and a vehicle robbery requires the defendant take the vehicle. So in the words of the guideline, the taking of the vehicle is an act that is, quote, necessary for the successful completion, end quote, of the vehicle robbery. Now, contrary to the government's claim, the phrase believed necessary does no work in this case because Linares did not believe that he could commit a vehicle robbery without taking the vehicle. Rather, he understood that for a, quote, successful completion, end quote, of a vehicle robbery. Well, if he was in the vehicle, I mean, did he need to move it a few feet under the argument you're making? Would that be taking? That would be taking, I think, if he moved the vehicle. That sounds like it's taking. So as long as it was in park, there's no – he hasn't completed all the acts necessary. So that's not the statutory – that's not the language you're focusing on. I'm just focusing on the facts here. So he was not in the vehicle. He never entered the vehicle. He went beside the vehicle. He did. If you watch the film, it looks like he's maybe trying to open the door, but he doesn't get inside is what you're saying. That's correct, yes. And we think under these – now, obviously – so the key facts here from our perspective, the vehicle is unoccupied. There are no keys in the vehicle. And so those two things tell us that even if he has access to the vehicle, he can't take the vehicle without – I mean, I guess he would have to hotwire it. He can take it if he gets the keys, though. Correct. And he had certainly demanded the keys. And it is – in fact, he knew that there was a 911 call or presumed that that was what the call was about because he spoke to that. And so why could the district court not assume that absent the 911 call, he would have marched straight up to the door with his firearm and demanded the keys until he got them? About to complete. So if we're focusing on the interruption aspect of it, or I think what we would say on that is that inference is implausible under these facts. And we think that inference is implausible under these facts because he was standing at the vehicle armed. And if his – if the inference is that he was going to go to the home for the keys, he had no reason to go to his vehicle. I mean, that – Sure he did. The automobile was running when he walked to the automobile. And it was turned off with the key fob from the house. So he had every reason in the world to walk to the vehicle, open the door, and drive off. No, I meant his vehicle. So when I said he had no reason to return to – I meant his vehicle. Well, he did have a reason, which is he couldn't get into the other one. So what I'm saying is that if the inference is that he was still attempting to take the vehicle, it's not plausible that he would have walked – instead of walking to the home where the keys were, that he would have walked to his vehicle. It's on the way. No. His vehicle is between the vehicle that he allegedly was trying to steal and the home. So I don't think that's true. He walked farther away from the home to get to the other vehicle. She parked on the other side of his car, is my understanding. So if you watch – I don't think that's right. If you watch the video, you can watch Marion Diaz. When she parks the vehicle, she walks straight to the home. She walks past his vehicle. She walks in front of it. I mean, she doesn't walk to – so I guess what I'm saying is that – I'll assume you're correct on that, even though that's not my understanding, and we'll proceed from there. I mean, I guess what I'm saying is that he would have done what she did. He wouldn't have went to his vehicle. That's what I'm saying, as a fact. Now, if you disagree with that, I still think that under the about to complete aspect of this, at that point, he is still not about to complete a robbery. Well, the district court said he was, and the district court gets some deference here on a clear air standard, right? We're not reviewing this de novo. It's not the sentencing hearing. So if the district court says his demands, his knowledge of the call, his response to the call, his demanding the keys so that he can leave, all add up that he was going to keep on walking up to the house until he got the keys. Who are we to disagree with that? So a few things there. I mean, the district court never found that he was going to continue walking up to the home. I mean, I guess that's an inference you can draw. But the district court never drew that inference. Second, we think that the about to complete analysis is de novo because it is a mixed question of law and fact. And the district court would not receive any deference on that particular point. But even if you disagree with that, you still, I mean, the about to complete, I mean, he has to be about to finish the taking. That is the language of the statute. And I don't think under these particular facts you get anywhere near satisfying. This is not a case where it is an occupied vehicle, a vehicle with the keys. I mean, he is so far away. What if he would have walked halfway up the walk and then saw that the call was being completed and turned around? Would that be good enough? So that would have made the 911 call. I would agree that that would make the 911 call the interruption, and that would change my second argument. But wouldn't it also suggest he was about to complete it? There was no reason for him to go to the door except to get the keys. I mean, I guess it really comes down to how you're defining about to complete. I mean, under my, I think under the plain ordinary meaning of about to complete, that's still not enough. I mean, he is not about to complete the robbery. Is it all standard of review here? I mean, I think we can win under a clear air standard. I really do, because of the text. I mean, I just, when we think in normal terms when we're about to complete something, the word is complete, about to complete. It's not about to start. It's not about to get ready. It's about to complete. So we're talking about that point in time at which something is about to be completed. And I just think you cannot get there in this case. Now, even if, I do want to talk about the third issue, because I think this is maybe our strongest textual argument, and that is the similar language. The way the guideline is written is that the interruption must be an event that must be beyond the defendant's control. But it also must be an event that is similar to an apprehension. And I think the problem here is that the government wants to say that anything that precedes the interruption is the interruption. So the 911 call is similar to an apprehension because it could lead to an apprehension. And I think that's just wrong. And I think, really, under the government's reading of this guideline, the word similar does absolutely no work at all. You can take that word out, and that is exactly how the government reads the guideline. So, I mean, I think you can think about, you know, a pregnancy. You wouldn't say pregnancy is similar to giving birth. You wouldn't say purchasing a plane ticket is similar to flying on a plane. I mean, the things that you do before another thing are not similar to that other thing. What is an interruption that is similar to an apprehension? Do you have an example? Yes. So, a few things. I think an apprehension is typically by law enforcement. So, you know, an apprehension by someone who's not a law enforcement officer would be similar to an apprehension. I think you could say that so apprehension is a physical seizure. I think you could say a seizure by control is similar. So an officer who points a gun at someone and says stop, I think that would be similar to an apprehension. I think you could say the same thing about a victim who does that. What about a patrol car coming around the corner with the lights and siren going? I think that would. Please. I think you could say that's similar. The next thing I was going to say would be like an attempted apprehension. I think that could be considered similar. I think there is quite a big bucket of things that are similar, but they do not include, you know, 911 call. That's not, once you go down that line, I think you're reading words out of the stench. I mean, the interesting thing about this guideline is that it's, you know, 35 years old. And there's, I mean, I didn't find a case on this. I mean, we have two published opinions, and they're very weird. And they involve, they don't involve this language. And they're factually odd. And I think they're entirely unhelpful. I just think the precedent in this area is unhelpful. And I think what is very, you know, kind of fun about this is that you can actually interpret this guideline on a clean slate, and how many times you get to do that. And I think if you do that in this case, and you take the language of the guideline and apply it to these unique facts, and I think these are unique facts, super unique facts. I don't think this is what the commission thought when they were talking about most things would count. You know, I think you have that opportunity, and you should vacate and remain. How would you distinguish U.S. versus Owens? That's 2001. It's pretty old, 20 years old. Yeah, I mean, it's a really old unpublished opinion. I think if you look at Owens, it wasn't even argued. And the defendant in that case didn't even file a reply brief. So I'm guessing there wasn't much help. But, I mean, Owens, I would urge you not to rely on that case. But factually, it's just different, even if you think there's something. There's no analysis, no textual analysis in Owens. But, I mean, the vehicle was occupied. The keys were obviously in the car. It was running. The vehicle was at a stoplight. So I think even more importantly than that is the defendant in Owens pointed a gun at the driver as the defendant reached the driver's side door. Here, you don't have a gun being pointed at anyone, and he didn't approach the vehicle until she had walked away. I mean, what's interesting about this case, he could have done what the defendant did in Owens. She was at the vehicle. She was in the vehicle. She walked by him, like you just said, Judge Phillips. He didn't do it. And that's why this case should come out differently than in Owens. And I'll reserve the remainder of my time. Thank you, counsel. Let's hear from the government. Good morning, Your Honors. Assistant United States Attorney Brian Clark for the United States. May it please the Court. When Mr. Linares walked up to Mary Ann Diaz's running car armed with an assault rifle and trying to steal the car, he was about to complete all the acts he believed necessary to commit the crime. That is what the district court found, and that finding is subject to clear error review on appeal. If it weren't for Mary Ann Diaz refusing Mr. Linares's demands for the keys and Ruben Diaz's call to 911, Mr. Linares would have left in Mary Ann's car that day. I don't understand what you just said. The language, the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense. You can't complete them all until you get into the car and grab the steering wheel and hit the accelerator. Can you? So that is not how courts have interpreted the about to complete all acts. No, I'm not on about to complete. You were talking about completed all of the acts he believed were necessary. That's what you were speaking to. So that's what I addressed. I'm sorry. If I didn't, I meant to say that he was about to complete all the acts he believed necessary to commit the crime. And it is true that in order to actually commit the crime, he would have had to get into the car and drive away with it. But Mr. Linares does not cite a single case where a court has required a defendant to actually complete the crime. After all, this is in the attempt guideline. And so the question is simply whether a defendant gets close enough to completing the intended offense that it warrants sentencing the defendant as though he had actually completed that offense. And that's the purpose of the exceptions to the three-level attempt reduction. And what the Sentencing Commission said is the purpose of that provision is that where a defendant's conduct is so dangerous and shows such a high level of culpability that it warrants sentencing him as though he had completed the attempted offense. And here what Mr. Linares did is he walked up to Marian Diaz's car. At the time, it was running. When he was walking up to the car, he was about to complete all of the acts he thought were necessary to complete the crime. He clearly walked up to the car door. He tried to get into it. He tried to steal it. At that point, Marian Diaz turned around and turned the car off, and it was locked. So at that point, he was thwarted. He was unable to take the car. That's when he started demanding the keys. And the district court found, as a factual matter, that as he was demanding the keys, asking for them, demanding them, that is when he turned from the car and saw Ruben calling 911. And it's when he saw Ruben calling 911 that Mr. Linares's plan changed from trying to steal the car to trying to not get caught. And I know Mr. Linares relies heavily on this idea that he actually had already given up and he was walking back to his car at that point. There's no factual finding that he was actually walking back to his car. And because Mr. Linares did not make the specific arguments that he makes on appeal, there was no factual finding on that point. And to the extent Mr. Linares is here on appeal asking this court to find different facts than were found below, this court typically doesn't do that. Well, what if I said the only way that he could be about to complete the crime when he needs the keys is to walk up to the house and kick the door or point his firearm at someone until he got the keys? Why doesn't that make sense? That seems like a better line than standing 20 feet away. I think that does make sense. And I think what the district court found is that he was in the process of doing that when he saw Ruben calling 911. And that is what changed everything. Did the district court say that? If the district court said that, then I'm in a different position. If the district court suggested that absent the call, he would have kept walking up to the door until he got the keys, then I may be more on board with what you're saying. But I don't remember the district court saying that. The district court did not play out the factual scenario and say that it appeared that Mr. Linares was on his way to the house. He didn't need to? No, I don't think so. Because what it said was Mr. Linares was trying to take the car. He was actively trying to take the car. He was demanding the keys. And his demands for the keys were cut short when he noticed that Ruben had called 911. It's no different, really, than in Owens where the carjacker runs up to the car, tries to open the car door, can't get it open, demands that the driver leave the car. And instead of complying with the demands, the driver floors it and leaves. Well, in that situation, the court didn't say, well, the defendant wasn't about to complete all acts because he hadn't pulled the driver from the car yet. He hadn't been able to get the door open. He wasn't sitting in the driver's seat, which is what I think Mr. Linares is arguing. Instead, it said he was about to complete all the acts because a demand like that when you're armed is sufficient. And if the driver, what Owens said, is if the driver had complied, the crime would have been completed, almost certainly. The same is true here. If Mary Ann had complied and given her keys to Mr. Linares, almost certainly the crime would have been completed. But Mr. Linares wasn't able to get that far only because Ruben called 911. And I think an important point is that Mr. Linares focuses on, he tries to rewrite the guideline to say that the defendant had to be about to finish the crime. But that is not what the text of the guideline says, and it's not how this or other courts have interpreted it. And it doesn't matter if the crime was factually impossible, the crime was unlikely, or any of those things. What matters is that he took acts that he believed would result in him, for example, getting the keys and being able to leave with the car. And that's what Owens stands for. And I think Mr. Linares' interpretation of the guidelines is far too parsimonious and contrary to how it's been applied. Well, let me ask it to you this way. If the district court had said, heard all of this evidence, and I don't think he would have actually gone up to the front door and pointed the gun at someone, absent the call even. But I'm still going to apply the guidelines the way I have here. Would you say that would be an affirm? No, I think that would be a different story. Because in that situation, the district court would be finding that Mr. Linares had, I guess, either given up or was not going to follow through on trying to get the keys. To use the guidelines language, he wasn't about to complete all such acts for the successful completion of the substantive offense, right? No, I disagree. Do you disagree that's the guideline language? I agree that that's a guideline language, but I disagree that it necessarily follows that it required a specific factual finding that Mr. Linares was walking back up to the door at that point. Could he successfully complete the crime without doing that if they're not giving him the keys otherwise, which they weren't? No, but he was interrupted before he was able to do it. So in some ways, there is a counterfactual way of looking at this. And that's basically what this court did in Owens. It basically asked, what would have happened if the victim had complied with the defendant's demands? In Owens, the court said, well, the crime would have been completed. The same is true here. And I don't think it requires any additional finding. And respectfully, if this court determines or decides that some additional factual finding was necessary, it was Mr. Linares' burden to object to any of the factual findings. He never did. He didn't raise any of these arguments below. All of this is brand new. All he said below is, it's an attempt. Therefore, I'm entitled to a three-level reduction. The government said, well, the reason Mr. Linares is not entitled to a three-level reduction is because he was thwarted in carrying out the crime by the victims. And Mr. Linares did not respond to that. And so to the extent that this court is dissatisfied with the record as it stands, Mr. Linares had an obligation to make factual objections below. And he just didn't. And respectfully, my friend Mr. Hansmeier says that this court is riding on a clean slate. I would urge this court to look at the Alexander case, where a very similar thing happened. A defendant came into court and urged the court to adopt a real novel and parsimonious interpretation of a guideline and said that this court was riding on a clean slate. And this court directly rejected that argument, saying, no, we have a lot of cases. And there's a lot of case law out there that apply the guideline. We're going to look at those. And we're going to follow that. And that's what the government is urging this court to do, is to look at the case law and see how this guideline has been applied. It does not require Mr. Linares to be sitting in the seat of the car about to put the car in drive before a district court could deny him a three-level attempt reduction. I think what's really telling is that on page 12 of Mr. Linares' reply brief, it really shows how far he's willing to take this argument and how far he thinks it goes. He argues that even if Marianne had walked up and given Mr. Linares the keys, he's still not about to complete the offense. That makes no sense to me. He argues that even if he had everything in his control in order to commit the offense, that it's still not about to be completed. That is completely inconsistent with the text of the guideline, with how it's been applied. And I think it points up the fact that Mr. Linares' interpretation of the guideline that he's urging on the court is simply too narrow. And I think with respect to the standard of review, I would just say that this finding is, before this court, on clear error review, that this court said in Bolden that clear error review applies. It also said in Owens and in Orr that clear error review applies. Numerous other courts, not just the Eighth Circuit, even cases that Mr. Linares relies on, such as Wascom and Martinez-Martinez from the Fifth and the Ninth Circuits, they apply clear error review. So that's the standard of review. And then with respect to the 911 call, Mr. Linares makes two arguments with respect to the 911 call. He first argues that as a matter of fact, the 911 call was not an interruption. But again, Mr. Linares did not make that objection below. He didn't say anything about that below. And now he's asking this court to find new facts to say that it wasn't an interruption. If he had objected below, it would have allowed the district court to find facts and to entertain the objection. But he didn't do that, and this court typically finds arguments like that waived. And then with respect to the legal question of whether a 911 call can ever be an interruption, I would point this court, first of all, to page 17 of Mr. Linares' reply brief where he says that he agrees on the merits that a 911 call could be an interruption. The question isn't interruption. There's an interruption. Take that for fact. But it says interruption by some similar event. And this similar event ties back to apprehension. So by something similar to an apprehension. And we've heard some examples. A patrol car comes screaming around the corner, and the guy runs. He's not apprehended. He jumps the fence, and he's really fast. But your interpretation is anything that alerts the authorities. And is that similar to an apprehension? So respectfully, I think our interpretation of interruption is even broader than that. It doesn't necessarily require alerting the authorities, although alerting the authorities certainly would qualify, like the 911 call. But, for example, this court found that the driver speeding away in Owens was an interruption that precluded the defendant from completing the offense. And that was a sufficient interruption. Now, I think the differences between Mr. Linares' position and ours is that Mr. Linares emphasizes how similar the interruption has to be to an apprehension. And basically, in many ways, writes out the interruption prong of the provision altogether. But even if this court were to disagree with that, Mr. Hansmeier said that an apprehension or an interruption by control would be sufficient. And Judge Timkovich gave the example of the sirens wailing on their way to the location. Well, that's effectively what happened here, where Rubin was on the phone with the police, calling the police. Mr. Linares knew or assumed that that's what was happening. And he knew in that moment the walls were closing in. He had to leave or he was going to get caught. The authorities were on their way. So even if this court were to construe that interruption prong of the provision more narrowly to require some sort of law enforcement presence or something along those lines, something more akin to a traditional apprehension, we have that here. And we know from the facts that shortly after Mr. Linares was fortuitously able to get his car started, the police show up and they arrest him a short time later at a gas station. And so here, even if the court disagrees with our interpretation of interruption and opts for a narrower definition, it's still satisfied here. And I see my time has expired. Thank you for your time. And we would ask the court to affirm Mr. Linares' sentence. Thank you, counsel. We have some rebuttal time. All right. Let me try to get out four points. So the first, the government at one point said that there was nothing in the record about him walking back towards the vehicle. That is the officer's testimony. That is the government's witness saying he walked back towards the vehicle, then the 911 call happened. On this page 12 of my reply brief, I mean, what I say there is that she was in her home with the keys. Obviously, if she comes out of the home and gives him the keys, then he doesn't get a three-level reduction. I mean, that's not my position. My position is that the facts of this, I mean, obviously the government can add facts and that changes the equation. But she's in the home with the keys. The car is parked on the side of the road. He's not about to complete the robbery. On precedent, you know, the government takes all of these cases that talk about different things. Like Owens did not talk about an interruption. There was not an argument in Owens that driving away isn't similar to an apprehension. It just wasn't an argument. So, yeah, those are the facts, but that was not addressed, and it doesn't stand for anything. It's an unpublished case, no reasoning, no textual analysis. And then I guess I'm running out of time. I would just say at the end of the day, I think there is a ton of work for this guideline if you just take the text and apply it. And when you do that in this case, this is a super weird situation. It's unique, and he shouldn't be punished for completing a crime he didn't commit or what he was not about to complete. Thank you. Thank you, counsel. I appreciate the argument. You're excused, and the case is submitted.